# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
September 20, 2023 Session

## STATE OF TENNESSEE EX REL. SULLIVAN COUNTY TENNESSEE ET AL. v. AMY S. TOCHEV ET AL.

**Appeal from the Chancery Court for Sullivan County**
**Nos. 20-CV-18707, 20-CB-27183, 20-CK-42361      John S. McLellan, III, Judge**

_____

## No. E2023-00072-COA-R3-CV
_____

A taxpayer failed to pay property taxes for a number of years. The county began enforcement proceedings and, following the entry of a default judgment against the taxpayer, the taxpayer's property was ultimately sold at a delinquent tax sale. The purchaser filed a writ of possession to obtain possession of the property from the taxpayer, at which time the taxpayer filed a motion to set aside the default judgment and resulting tax sale. The taxpayer alleged lack of notice concerning the underlying delinquent tax proceedings and violation of her due process and equal protection rights. The trial court denied the taxpayer's motion to set aside, concluding the taxpayer was properly served with notice of the underlying delinquent tax proceedings. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed;**
**Case Remanded**

KRISTI M. DAVIS, J., delivered the opinion of the Court, in which D. MICHAEL SWINEY, C.J., and THOMAS R. FRIERSON, II, J., joined.

Jerry W. Laughlin, Greeneville, Tennessee, and Lanny R. Norris, Elizabethton, Tennessee, for the appellant, Amy S. Tochev.

Paul J. Krog and Nicholas W. Tsiouvaras, Brentwood, Tennessee; and Mark S. Hanor, Kingsport, Tennessee, for the appellee, DH RETENN 1 LLC.

Daniel P. Street, Blountville, Tennessee, for the appellee, Sullivan County, Tennessee.

Jonathan Skrmetti, Attorney General and Reporter; Andrée Sophia Blumstein, Solicitor General; and Mary Ellen Knack, Senior Assistant Attorney General, for the intervening appellee, State of Tennessee.

## OPINION

## I. Background

Amy S. Tochev, as Trustee under the Amy Tochev Life Trust Agreement dated May 30, 2003 ("Trustee"), is the former owner of the property identified as Tax Map 046L, Group A, Parcel 013.00 and Tax Map 046L, Group A, Parcel 013.001 in Sullivan County, Tennessee (collectively, the "Property"). Trustee failed to pay property taxes for 2016, 2017, and 2018, as a result of which, the State of Tennessee ex rel., Sullivan County, Tennessee (the "County") initiated delinquent tax sale proceedings against Trustee. The Property comprises an improved parcel with a mailing address of 1501 E. Stone Drive in Kingsport, Tennessee and an adjacent unimproved parcel. On the improved parcel is a commercial building that was used as a medical practice by Amy Tochev's husband, a physician, from approximately 2003 until approximately 2016. In 2016, Dr. Tochev discontinued providing routine medical services but continued using the building at 1501 E. Stone Drive to see individuals by appointment. The Tochevs have also resided in Sullivan County, albeit on an unrelated property, since 2001.

The Tochevs initially purchased the Property jointly in their individual capacities in 2003. The deed granting title to the Tochevs, individually, listed the name and address of the property owners as Dr. Tochev "and wife, Amy S. Tochev" and listed their home address. That deed also listed the name and address "of the Person or Entity Responsible for the Payment of the Real Property Tax" as "Same as property owner[.]" On July 21, 2003, the Tochevs executed a Quitclaim Deed conveying the property to Trustee. That Quitclaim Deed listed the "name & address of owner and taxpayer" as Trustee at the 1501 E. Stone Drive address.

In addition to the tax years at issue in this appeal, Trustee also failed to timely pay taxes on the Property in prior years. In each of those prior cases, summonses and notices were served on Trustee via certified mail addressed to her at 1501 Stone Drive in Kingsport, Tennessee. Various employees of Dr. Tochev's medical practice signed for these certified mail deliveries in 2008, 2013, and 2015. In each of those cases, Trustee ultimately paid the overdue property taxes prior to the confirmation of any sale of the Property.

The County initiated the first delinquent tax sale proceeding at issue in this appeal against Trustee in the Sullivan County Chancery Court (the "trial court") on April 2, 2018, for any unpaid taxes for tax years 2007 through 2016 (the "2016 Case"). Two notices and summonses to Trustee were issued in the 2016 Case (the "2016 Summonses") and were sent via certified mail addressed to Trustee at the 1501 Stone Drive address. A return was filed stating that certified mail was delivered on June 18, 2018. The return includes a copy of the certified mail receipt showing that delivery was signed for by Georgia Counts, another employee of Dr. Tochev. The County initiated the second delinquent tax sale

proceeding at issue in this appeal against Trustee in the trial court on April 1, 2019, for any unpaid taxes for tax years 2008 through 2017 (the "2017 Case"). Two summonses and notices to Trustee were issued in the 2017 Case; however, there is no return for those summonses in the record. The County initiated the third and final delinquent tax sale proceeding at issue in this appeal against Trustee in the trial court on April 1, 2020, for any unpaid taxes for tax years 2008 through 2018 (the "2018 Case"). Two notices and summonses to Trustee were issued in the 2018 Case and were sent via certified mail addressed to Trustee at the 1501 Stone Drive address. That certified mail was delivered on August 12, 2020, but it is unknown who signed for the delivery as the signature on the certified mail receipt is illegible. However, a box was checked on the certified mail receipt indicating that it was signed for by an agent of the addressee, Trustee.

On April 2, 2020, the trial court entered an order consolidating the 2016 and 2017 Cases into the 2018 Case. Thereafter, on October 16, 2020, the trial court entered an order granting the County a default judgment against Trustee in the 2018 Case (the "Default Judgment"). Don Henderson purchased the Property at the December 16, 2020 tax sale conducted by the County, and the trial court entered a final order confirming the sale on December 17, 2020. The Clerk and Master of the trial court issued a Clerk & Master's Tax Deed conveying title of the Property to DH RETENN1, LLC (the "Purchaser") on January 3, 2022 (the "Tax Deed").

On April 20, 2022, Trustee filed a motion pursuant to Rule 60.02 of the Tennessee Rules of Civil Procedure and an Affidavit of Trustee in support thereof, seeking to set aside the Default Judgment, the subsequent order that the Property be sold, and the Tax Deed. Trustee averred that, on or about March 23, 2022, she "received in the mail both at 1501 E. Stone Drive, Kingsport, Tennessee, and at her residence" a letter notifying her that the Property had been sold. Trustee further averred that, despite knowing that she had not paid the relevant property taxes, she was unaware, prior to receiving the March 23 letter, that the County had initiated the 2016, 2017, and 2018 Cases against her. Trustee denied signing the certified mail receipt for the notices and summonses issued in the 2018 Case, which were delivered on August 12, 2020, and further denied knowing who signed such receipt. With respect to the 2016 Summonses, which were signed for by Georgia Counts on June 18, 2018, Trustee averred that she had never authorized Ms. Counts – or any other person – to receive mail, or sign for certified mail, on behalf of Trustee or the Trust. She also denied that Ms. Counts actually delivered the mail to her. Trustee acknowledged that the annual property tax statement for the Property had historically been mailed to her at the 1501 E. Stone Drive address, where she had retrieved them, but she stated that she had always believed it to be a mistake that they were delivered there. Trustee argued that she had not been properly served with the summonses and notices pursuant to Rule 4 of the Tennessee Rules of Civil Procedure; therefore, she argued, the trial court did not have personal jurisdiction over her, and the Default Judgment was void, as was the resulting sale of the Property.

The County argued that Trustee's motion should be denied because Trustee had been properly served in accordance with the requirements of Tennessee Code Annotated section 67-5-2502, and Trustee had not shown by clear and convincing evidence that the person or people who signed for the delivery of the notices and summonses were at that time expressly prohibited in writing from accepting mail for Trustee. Trustee filed a restated Rule 60.02 motion and Affidavit of Trustee in support thereof, wherein she denied that she was properly served pursuant to either Rule 4 or section 67-5-2502. She also argued that section 67-5-2502(a)(3) and (4), as interpreted by the County, violates the Due Process and Equal Protection clauses of the United States and Tennessee Constitutions. Because she was challenging the constitutionality of a Tennessee statute, Trustee served a copy of the restated motion upon the Tennessee Attorney General's office, as required by Tennessee Code Annotated section 29-14-107(b). In support of her restated motion, Trustee filed an Affidavit of Richard L. Norris, a licensed Tennessee attorney, who stated, in relevant part:

> 3. From my computer I accessed the records in the Register's Office for Sullivan County, Tennessee, and when I typed in a search for documents recorded under the last name of "Tochev," with the first name "Amy," the earliest deed I found was a deed recorded on October 17, 2001, indexed under the name of Amy Sharrett Tochev, and which is a deed for a lot in the Steele Creek Colony Subdivision.[1]

> 3. [*sic*] The records of the Register's Office for Sullivan County, Tennessee, reflect that the property located in Steele Creek Colony Subdivision . . . continues to be owned in part by Amy Sharrett Tochev.

> 4. When I accessed the Tennessee Property Data website from my computer and searched under the property tax records for Sullivan County, Tennessee, and typed in the name "Tochev," I found one parcel of property which states that it is owned by Tihomir Tochev and Amy Tochev, and is located [in the Steele Creek Colony Subdivision], and there is clearly a residence on that property.

> 5. When I accessed from my computer the records on the website of Tennessee Trustee, and the records thereon for Sullivan County, Tennessee, and typed in the name of "Tochev," I found listed property of Tihomir Tochev and Amy Tochev located [in the Steele Creek Colony Subdivision].

---

[1] The referenced lot is the location of the Tochevs' personal residence.

Finally, Trustee filed a supplement to her restated motion, wherein she argued that section 67-5-2502 requires that a diligent effort be made to give actual notice of the proceedings and that the County did not make such diligent effort in this case.

On July 1, 2022, the State of Tennessee filed a memorandum of law defending the constitutionality of section 67-5-2502(a)(3) and (4). The State argued that the challenged provisions do not violate the right to due process because, although the taxpayer in a delinquent tax suit has a heavier burden to challenge the notice received by an agent, notice provided in accordance with the various provisions of section 67-5-2502 is still required to be reasonably calculated to apprise the taxpayer of the suit. The State also argued that the challenged provisions do not violate equal protection because delinquent taxpayers are not similarly situated to defendants in other kinds of lawsuits, at least for notice requirements. Specifically, the State maintained that delinquent taxpayers are delinquent because they have failed to satisfy a previously known tax obligation. Alternatively, the State argued that, even if the classes of defendants are similarly situated, a rational basis exists to treat such classes differently. Further, the State contended that imposing such burden on the defendant, instead of on the taxing authority, is rationally related to the legitimate objective of allowing the taxing authority to proceed on the basis of a receipt of service by an adult physically present on the premises of the subject property.

Following an evidentiary hearing, the trial court entered an order denying Trustee's restated Rule 60.02 motion on December 20, 2022. The trial court found, in part:

> 6. Amy Tochev has a lengthy history of failing to timely pay property taxes on 1501 E. Stone Drive, beginning with the tax year 2007, when a summons and notice of legal proceedings were left with Defendant Amy Tochev, Trustee or her agent.

> 7. Amy Tochev testified that there was no reason to authorize anyone to receive mail at the [1501 E. Stone Drive] address nor to accept mail although the County Attorney showed that the mail was accepted for the 2006 taxes by Kelly Bailey; 2011 taxes accepted by Sarah Osborne; and, 2013 taxes accepted by Sarah Osborne.

> 8. Similarly the Summons and Notice for 2016 Delinquent tax legal proceedings . . . [was] accepted by mail by Georgia Counts, as agent for Amy Tochev, Trustee.

> 9. Amy Tochev stated that it never occurred to her to make tax payments when she made mortgage payments.

- 5 -

10. Letter by regular mail from the Delinquent Tax Attorney to Amy S. Tochev, Trustee at 1501 Stone Drive, Kingsport, Tennessee advising that if the owner name or the address is incorrect to notify the Delinquent Tax Attorney. Delinquent Tax Attorney Epperson stated that all notices of sale, final sale, and any other information was sent to the [same] address and no mailing came back to the Delinquent Tax Attorney.

* * *

13. That Amy Tochev, Trustee had an affirmative duty to inquire as to the amounts of such taxes and their payment status pursuant to Tennessee Code Annotated § 67-5-2103(j).

* * *

17. Service of process on the Defendant, Amy Tochev, Trustee, by mail was proper.

* * *

19. . . . The [trial c]ourt finds that Amy Tochev, Trustee, impliedly authorized people working at her husband's business at 1501 E. Stone Drive to receive mail on her behalf.

20. Amy Tochev, Trustee, failed to provide proof of a written prohibition as she has historically accepted by other individuals in the past other than Georgia Counts, for the 2016, 2017, and 2018 tax years; as Sarah Osborne accepted service and Kelly Bailey, Tochev's husband's employee accepted service as agent for Amy Tochev, Trustee. As Amy Tochev, Trustee, admitted in her testimony that mail addressed to her at 1501 E. Stone Drive was accepted and signed for by these individuals whom she knew had worked for her husband.

* * *

24. Amy Tochev, Trustee, had listed her name and address on her deed and the summons to collect delinquent property taxes and to sell the property was forwarded by mail to 1501 East Stone Drive and as Stephanie Epperson, the Delinquent Tax Attorney testified she had completed several title searches and she introduced as an exhibit to her testimony the "property card" from which the Sullivan County Assessor of Property, and the State of Tennessee, "Real Estate Assessment Data" shows the property owner and

mailing address as "Amy S. Tochev, Trustee, 1501 Stone Drive, Kingsport, TN 37660."

    25. Stephanie Epperson, the Delinquent Tax Attorney, testified she had sent twelve notices of delinquent taxes and legal proceedings to sell her property for delinquent taxes to Amy Tochev by regular mail which the law presumes that a letter that has been properly mailed has been delivered to and received by the addressee.

(Internal citations to trial exhibits omitted). This timely appeal followed.

## II. Issues Presented on Appeal

Trustee raises ten issues for review, which we consolidate and restate as follows:

1. Whether the trial court erred in denying Trustee's motion to set aside the Default Judgment and the subsequent orders resulting from the Default Judgment.
2. Whether Tennessee Code Annotated section 67-5-2502(a)(4) is constitutional.

The Purchaser raises two additional issues:

3. Whether Trustee waived her issues raised on appeal.
4. Whether Purchaser is entitled to its attorney's fees incurred on appeal pursuant to Tennessee Code Annotated section 27-1-122.

## III. Analysis

### A. Trustee's Rule 60.02 Motion

#### i.

"In general, we review a trial court's ruling on a request for relief from a final judgment under Rule 60.02 of the Tennessee Rules of Civil Procedure . . . pursuant to the abuse of discretion standard." *Turner v. Turner*, 473 S.W.3d 257, 268 (Tenn. 2015) (citing *Discover Bank v. Morgan*, 363 S.W.3d 479, 487 (Tenn. 2012)). Despite this, we "apply de novo review, with no presumption of correctness, when reviewing a trial court's ruling on a Tennessee Rule 60.02(3) motion to set aside a judgment as void" due to a lack of jurisdiction over a defendant. *Id.* at 269. "Any factual findings a trial court makes shall be reviewed de novo, with a presumption of correctness, unless the evidence preponderates otherwise." *Id.* (citing Tenn. R. App. P. 13(d)). To obtain relief under Rule 60.02, the moving party must "establish by clear and convincing evidence that she is entitled to relief." *Hussey v. Woods*, 538 S.W.3d 476, 483 (Tenn. 2017) (quoting *McCracken v.*

*Brentwood United Methodist Church*, 958 S.W.2d 792, 795 (Tenn. Ct. App. 1997)). "Evidence is clear and convincing when it leaves 'no serious or substantial doubt about the correctness of the conclusions drawn.'" *Id.* (quoting *Goff v. Elmo Greer & Sons Constr. Co.*, 297 S.W.3d 175, 187 (Tenn. 2009)).

"A court obtains personal jurisdiction over a party defendant by service of process." *Turner*, 473 S.W.3d at 271 (citing *Ramsay v. Custer*, 387 S.W.3d 566, 568 (Tenn. Ct. App. 2012)). Typically, such service of process is governed by Rule 4 of the Tennessee Rules of Civil Procedure. However, the Tennessee General Assembly has enacted detailed statutes, codified at Title 67, Chapter 5 of the Tennessee Code Annotated ("Chapter 5"), that "provide[] for a specific and comprehensive scheme for the collection of delinquent property taxes[.]" Tenn. Code Ann. § 67-5-2103(d)(2). In so doing, the General Assembly expressly determined that "[s]tatutes that are not consistent with the statutory scheme for the collection of delinquent property taxes set out in this chapter should not be applicable to tax proceedings, tax liens, or the enforcement of such tax liens." *Id.* at 67-5-2103(d)(7). "This chapter shall be construed liberally in favor of the certainty and finality of property titles transferred pursuant to this chapter." *Id.* at 67-5-2103(e).

"The taxes assessed by the state of Tennessee, a county, or municipality, . . . upon any property of whatever kind, and all penalties, interest, and costs accruing thereon, shall become and remain a first lien upon such property from January 1 of the year for which such taxes are assessed." *Id.* at 67-5-2101(a). In turn, section 67-5-2415 governs notice to taxpayers of suits to enforce tax liens. It states in relevant part:

> (a) The court shall have jurisdiction to award personal judgment against an owner upon the claim for the debt upon determining that proper process has been served upon such owner. The court shall have jurisdiction to award a judgment enforcing the lien by a sale of the parcel upon determining that any [of] the following actions have occurred as to each owner:
>
> > (1) That proper process has been served upon an owner; [or]
> > (2) That the owner has actual notice of the proceedings by mail or otherwise; . . .
>
> * * *
>
> (c) Notice of the pendency of the proceedings as to a parcel constitutes notice of the pending sale of the parcel and vice versa.
>
> (d) If process is to be served upon a defendant, the defendant does not have to receive a copy of the complaint or exhibits. The plaintiff may in lieu thereof furnish to the defendant a notice identifying the proceedings

sufficiently for the defendant to determine the parcel which is subject to the delinquent taxes for which the defendant is being sued.

\* \* \*

(f) Process may be served either by an authorized process server or forwarded by certified or registered mail, return receipt requested, or by any alternative delivery service as authorized by Section 7502 of the Internal Revenue Code (26 U.S.C. § 7502).

(g) The return of the receipt signed by the defendant, spouse, or other person deemed appropriate to receive summons or notice as provided for in the Rules of Civil Procedure, . . . and filed as a part of the record by the clerk shall be evidence of actual notice and shall be grounds for a default judgment. . . .

Tenn. Code Ann. § 67-5-2415. Similarly, section 67-5-2502 governs notice to taxpayers of judicial tax sales.  It states in relevant part:

(a) \* \* \*

(3) Notice to parties or others in delinquent tax suits and sales shall be governed by the Tennessee Rules of Civil Procedure, except as modified in this chapter or as they may be inconsistent with the statutory scheme for the collection of delinquent property taxes set out in this chapter, and may be forwarded to the address of an owner of the property that is on record in the office of the assessor of property. If there is any remainder after the proceeds of the sale have been distributed pursuant to § 67-5-2501, the party receiving notice pursuant to this subdivision (a)(3) shall also be given notice of the amount of proceeds resulting from the sale, the division of such proceeds, and the remainder.

(4) A person, who is either expressly or impliedly authorized by another person to receive mail on behalf of the other person, is authorized to sign a receipt on behalf of the other person accepting registered or certified mail or correspondence delivered by an alternative delivery service, containing either a summons, complaint, or summary of the proceeding or a notice that has been or is to be filed in a tax proceeding. In every tax proceeding, the burden of proving by clear and convincing evidence that a person who signed such a receipt for a different person and was, in fact, at that time expressly prohibited in writing from accepting mail for the

second person, shall be upon the person challenging the sufficiency of the service or notice.

* * *

(b) It is the responsibility of the property owner to register the property owner's name and address with the assessor of property of the county in which the land lies.

Tenn. Code Ann. § 67-5-2502.

*ii.*

We turn first to Trustee's arguments with respect to the service actually provided in this case. Two notices and summonses to Trustee were issued in the 2016 Case and were sent to Trustee via a single certified mailing. The certified mail return receipt reflects that the certified mail was addressed to: "Amy S. Tochev, Trustee, 1501 Stone Dr., Kingsport, TN 37660" and it bears the signature of Georgia Counts. While the return receipt itself does not state the date of delivery, it is attached to a return (the "2016 Return") executed by the attorney who was then serving as the County's delinquent tax attorney, which indicates the certified mail was accepted on June 18, 2018.

A person that is impliedly authorized to receive mail on behalf of a delinquent taxpayer is also authorized to sign a certified mail return receipt containing a summons or notice that has been or is to be filed in a tax proceeding. Tenn. Code Ann. § 67-5-2502(a)(4). When the 2016 Summonses arrived, they were signed for by Georgia Counts. As she did before the trial court, Trustee argues on appeal that Georgia Counts was not impliedly authorized by Trustee to receive mail on her behalf; however, after hearing testimony from both Trustee and Ms. Counts, the trial court specifically found that Trustee impliedly authorized people working at Dr. Tochev's medical practice at the subject property to receive mail on her behalf. Implicit in this finding of fact was a finding that the witnesses' testimony was not credible. *See Edmunds v. Delta Partners, L.L.C.*, 403 S.W.3d 812, 824–25 (Tenn. Ct. App. 2012) (noting that a trial court's finding on credibility may be implied from the manner in which the trial court decided the case even when a trial court does not make an express credibility finding (citing *Richards v. Liberty Mut. Ins. Co.*, 70 S.W.3d 729, 733 (Tenn. 2002)). "When the resolution of the issues in a case depends upon the truthfulness of witnesses, the trial judge who has the opportunity to observe the manner and demeanor of the witnesses while testifying is in a far better position than this Court to decide those issues." *Id.* at 824 (citing *In re Arteria H.*, 326 S.W.3d 167, 176 (Tenn. Ct. App. 2010), *overruled on other grounds*). "If the trial court's factual determinations are based on its assessment of witness credibility, this Court will not reevaluate that assessment absent clear and convincing evidence to the contrary." *Id.*

(quoting *Franklin Cnty. Bd. of Educ. v. Crabtree*, 337 S.W.3d 808, 811 (Tenn. Ct. App. 2010)). With appropriate deference to the trial court's implicit findings on the credibility of Trustee and Ms. Counts, we conclude that the evidence preponderates in favor of the trial court's finding that Trustee impliedly authorized people working at Dr. Tochev's medical practice at the subject property to receive mail on her behalf. Consequently, under these circumstances, we conclude that Ms. Counts, an employee of Dr. Tochev's medical practice, was impliedly authorized to receive mail on behalf of Trustee.

Because Ms. Counts was impliedly authorized to receive mail on behalf of Trustee, the burden shifted to Trustee to show by clear and convincing evidence that Ms. Counts was expressly prohibited in writing from accepting mail for the Trustee at the time that she signed the certified mail return receipt for the 2016 Summonses. Tenn. Code Ann. § 67-5-2502(a)(4). Trustee offered no such evidence. A certified mail return receipt signed by a "person deemed appropriate to receive summons or notice as provided for in the Rules of Civil Procedure, . . . and filed as a part of the record by the clerk shall be evidence of actual notice and shall be grounds for a default judgment." Tenn. Code Ann. § 67-5-2415(g). In turn, Rule 4.04(10) provides that service by mail may be the basis for the entry of a default judgment when the record contains "a return receipt showing personal acceptance by the defendant or by persons designated by Rule 4.04 *or statute*[.]" Tenn. R. Civ. P. 4.04(10) (emphasis added). As discussed above, under these circumstances section 67-5-2502(a)(4) designated Ms. Counts as an individual authorized to accept the 2016 Summonses on behalf of Trustee. There was no writing expressly prohibiting Ms. Counts from accepting mail for Trustee at the time she signed for the 2016 Summonses; therefore, the certified mail return receipt signed by Ms. Counts provided adequate grounds for a default judgment against Trustee.

Despite this, Trustee argues that the trial court never gained jurisdiction over her because the record contains no affidavit of service for the 2016 Summonses as required by Rule 4.03(2) of the Tennessee Rules of Civil Procedure. However, Rule 4.03 only applies in a delinquent taxpayer case, such as this one, to the extent it is not "inconsistent with the statutory scheme for the collection of delinquent property taxes set out in [Chapter 5.]" Tenn. Code Ann. § 67-5-2502(a)(3). Furthermore, this Court must construe Chapter 5 "liberally in favor of the certainty and finality of property titles transferred pursuant to [it]." *Id.* at 67-5-2103(e). This is because "[t]he certainty and finality of the titles to real estate that have been conveyed pursuant to this chapter through the enforcement of tax liens is a necessary prerequisite to the development of improvements thereon[,]" which is one of the express purposes of the statutory scheme. *Id.* at 67-5-2103(d)(5)-(6). Trustee cites no authority suggesting that Rule 4.03 is consistent with Chapter 5, nor did our research reveal any such cases.[2] Instead, Trustee merely relies upon cases discussing the application of

---

[2] In her reply brief, Trustee cites to *State ex rel. Bradley Cnty. v. #'s Inc.*, No. E2014-00121-COA-R3-CV, 2015 WL 301227 (Tenn. Ct. App. Jan. 23, 2015), *perm. app. denied*, to support her position that

- 11 -

Rule 4.03 outside of the context of delinquent tax cases. Conversely, in this case, a strict application of Rule 4.03 would defeat what is otherwise sufficient service of the 2016 Summonses. This result would violate the express mandate from the Tennessee General Assembly that Chapter 5 be construed liberally in favor of finality of the Tax Deed issued to the Purchaser. Therefore, we conclude that Rule 4.03 does not apply in this case. *See* Tenn. Code Ann. § 67-5-2502(a)(3).

Trustee also raises a number of issues regarding the notice provided to her in the 2017 and 2018 Cases. Because we conclude that she was properly served in the 2016 Case, and in light of our analysis below regarding the effect of the consolidation of these cases, we need not address these issues regarding the 2017 and 2018 Cases.

*iii.*

Trustee argues that the Default Judgment must be set aside as to all tax years unless it can be shown that service upon her was sufficient in each of the three cases. However, Trustee does not cite to any authority that directly supports this argument. Instead, Trustee merely relies upon case law setting forth the general principle that a trial court in a delinquent tax suit does not have jurisdiction over a taxpayer unless the taxpayer is properly served.

The County responds by pointing out that the caption of the Complaint in the 2018 Case included the language "DELINQUENT TAX SUIT FOR THE YEARS 2008-2018[,]" and the relief requested by the County included an order of reference "to ascertain the exact amount of property taxes, interest, penalty, and costs due the [County] from the owners of each parcel, and that the lien for such sum be declared and enforced by the sale of the property assessed, subject only to the statutory right of redemption." Additionally, the summonses and notices issued to Trustee in the 2018 Case states: "PLEASE TAKE NOTICE that a lawsuit has been filed against you to enforce the lien securing property taxes owed to Sullivan County, Tennessee for the 2018 tax year *and all prior years, if any*." (Emphasis added). Finally, the County relies upon section 67-5-2409, which provides in relevant part:

> (a) If any other suits for delinquent taxes are pending against any particular piece of property, such suits shall be consolidated as a matter of right upon the filing of a notice of consolidation on behalf of the complainant. All taxes for which any given piece of property is liable and for which suits are pending may be included in the final decree.

Rule 4.03 applies in this case. However, unlike in this case, in *#'s Inc.*, this Court determined that neither the requirements of section 67-5-2415 nor Rule 4.03 were met. *Id.* at \*5-6. Therefore, this Court did not reach any conclusion in that case regarding whether Rule 4.03 is inconsistent with Chapter 5.

- 12 -

(b) The consolidation shall include into one (1) proceeding all actions to collect and enforce all delinquent taxes owing against the parcel, including delinquent taxes that become delinquent after the original action was filed. . . .

Tenn. Code Ann. § 67-5-2409.

In Tennessee, a suit is "pending" once a complaint is filed, even if the defendant has not yet been served. *West v. Vought Aircraft Indus.*, 256 S.W.3d 618, 624–25 (Tenn. 2008). Because the 2016 Case and 2017 Case were each "pending," they were properly consolidated into the 2018 Case, regardless of whether Trustee had been properly served in each of the cases. "Consolidation of the actions to include more recent delinquent taxes owed shall not require the issuance, service, or delivery of additional leading process, summons, or notice to interested persons who were served or notified pursuant to the original complaint in accordance with § 67-5-2415." Tenn. Code Ann. § 67-5-2409. As we concluded above, Trustee was properly served with leading process in the 2016 Case. Therefore, service of additional leading process upon Trustee was not required in the 2017 and 2018 Cases and, pursuant to section 67-5-2409(a), it was appropriate for the trial court to include the 2016 and 2017 taxes in the final decree entered in the 2018 Case.

### B.  Constitutionality of Tenn. Code Ann. § 67-5-2502(a)(4)

#### i.

We next turn to Trustee's challenges to the constitutionality of section 67-5-2502(a)(4).  As explained by the Tennessee Supreme Court:

> In evaluating the constitutionality of a statute, we begin with the presumption that an act of the General Assembly is constitutional. *See State v. Robinson*, 29 S.W.3d 476, 479 (Tenn. 2000); *Riggs v. Burson*, 941 S.W.2d 44, 51 (Tenn. 1997). We must "indulge every presumption and resolve every doubt in favor of the statute's constitutionality." *State v. Taylor*, 70 S.W.3d 717, 721 (Tenn. 2002); *see also Riggs*, 941 S.W.2d at 51; *In re Burson*, 909 S.W.2d 768, 775 (Tenn. 1995). This presumption applies with even greater force when the facial constitutional validity of a statute is challenged. *See In re Burson*, 909 S.W.2d at 775.

*Gallaher v. Elam*, 104 S.W.3d 455, 459 (Tenn. 2003).  Both of Trustee's raised issues regarding the constitutionality of section 67-5-2502(a)(4) are facial challenges.

First, Trustee argues that "to the extent that [section] 67-5-2502(a)(4) authorizes service of process of certified mail upon any person who is merely authorized to receive mail on behalf of the defendant, it is surely less reasonably calculated to provide actual notice to the defendant than the other feasible and customary substitutes for personal service of process." In so arguing, however, Trustee disregards the well-established standard for due process set forth by the United States Supreme Court.

"Due process does not require that a property owner receive actual notice before the government may take his property." *Jones v. Flowers*, 547 U.S. 220, 226 (2006) (citing *Dusenbery v. United States*, 534 U.S. 161, 170 (2002)). Rather, the government must simply provide "notice *reasonably calculated*, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* (quoting *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950)) (emphasis added). "In tax lien suits, the government must provide 'notice by mail or other means to ensure actual notice . . . if [the party's] name and address are reasonably ascertainable.'" *Wilson v. Blount Cnty.*, 207 S.W.3d 741, 750 (Tenn. 2006) (quoting *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 800 (1983)). In Tennessee, "[i]t is the responsibility of the property owner to register the property owner's name and address with the assessor of property of the county in which the land lies[,]" and notice of a tax sale may be forwarded to the address provided. Tenn. Code Ann. § 67-5-2502(a)(3), (b). That is precisely what happened in this case. Trustee provided the County with the 1501 E. Stone Drive address, and the County sent the 2016 Summonses to that address.

Trustee relies heavily upon the Tennessee Supreme Court's decision in *Hall v. Haynes*, 319 S.W.3d 564 (Tenn. 2010), to support her arguments. *Hall* was a medical malpractice case in which the Court analyzed whether process was properly served upon a medical corporation and/or one of its physician employees when the process was served by certified mail directed to the defendants and signed for by "various employees" of the medical corporation. *Id.* at 567. The Court ultimately held "that the authority to sign for and receive certified mail does not, on its own, confer the authority to accept service of process." *Id.* Trustee argues that this holding "is surely predicated upon the premise that such a procedure would not be reasonably calculated to give the defendant actual notice of the legal proceedings." Importantly, however, *Hall* was not a delinquent taxpayer case. The decision in *Hall* turned on the Court's interpretation of provisions of the Tennessee Rules of Civil Procedure, not constitutional principles of due process. *See id.* at 582 n.15 (noting that "the authority to sign for certified mail in the context of determining whether service was adequate under federal due process standards" was "a question not raised in [that] appeal"). Therefore, *Hall* is not relevant to this analysis.

Instead, the decision of the United States Supreme Court in *Dusenbery* is instructive. The *Dusenbery* Court analyzed the adequacy of notice served upon a prisoner and notifying him "of his right to contest the administrative forfeiture of property seized during the execution of a search warrant for the residence where he was arrested." *Dusenbery*, 534 U.S. at 163. "To effect such a forfeiture, the statute required the agency to send written notice of the seizure together with information on the applicable forfeiture procedures to each party who appeared to have an interest in the property." *Id.* at 164. The Court explained the government's efforts to serve defendant, to-wit:

> The FBI sent certified mail addressed to [defendant] at the correctional facility where he was incarcerated. At that facility, prison mailroom staff traveled to the city post office every day to obtain all the mail for the institution, including inmate mail. The staff signed for all certified mail before leaving the post office. Once the mail was transported back to the facility, certified mail was entered in a logbook maintained in the mailroom. A member of the inmate's Unit Team then signed for the certified mail to acknowledge its receipt before removing it from the mailroom, and either a Unit Team member or another staff member distributed the mail to the inmate during the institution's "mail call."

*Id.* at 168–69 (internal citations to record omitted). Although the government could have taken additional efforts to assure that the notice actually reached the defendant who was in its custody, such as escorting the defendant to the post office to sign for the certified mail himself, "the Due Process Clause does not require such heroic efforts by the Government; it requires only that the Government's effort be 'reasonably calculated' to apprise a party of the pendency of the action[.]" *Id.* at 170. The Court ultimately held that "the use of the mail addressed to [defendant] at the penitentiary was clearly acceptable for much the same reason [the United States Supreme Court] ha[s] approved mailed notice in the past." *Id.* at 172.

Similarly, in this case, sending notice of a tax sale to the address provided by the property owner was "'reasonably calculated' to apprise the property owner of the pending tax sale." *Davidson Pabts, LLC v. Worsham*, No. M2014-01061-COA-R3-CV, 2015 WL 4115174, at *6 (Tenn. Ct. App. May 18, 2015), *perm. app. denied* (citing *Wilson*, 207 S.W.3d at 750). "The [United States] Supreme Court [has] recognized that in order to meet minimum due process requirements, the method of notice need not be fail proof since 'constitutional law, like other mortal contrivances, has to take some chances.'" *Beneficial Tenn., Inc. v. Metro. Gov't of Nashville & Davidson Cnty.*, No. M2004-01071-COA-R3-CV, 2006 WL 568250, at *5 (Tenn. Ct. App. Mar. 8, 2006), *perm. app. denied* (quoting *Mullane*, 339 U.S. at 319). Unless "the government receives new information indicating its initial attempt at notice has failed[,] . . . when the government has attempted to provide notice and 'heard nothing back indicating that anything had gone awry,' the notice is

- 15 -

constitutionally sufficient if it was 'reasonably calculated to reach the intended recipient when sent.'" *Davidson Pabts*, 2015 WL 4115174 at \*5 (citing *Jones*, 547 U.S. at 226, 229–30). Therefore, contrary to Trustee's contention, the County "was not required to take additional steps to notify [Trustee] unless it learned that an otherwise reasonably calculated attempt to notify [Trustee] had failed." *Id.* at \*6 (citing *Jones*, 547 U.S. at 226).

This Court has previously held that section 67-5-2415(e)(1), which allows for notice to a delinquent taxpayer to be received and signed for by the taxpayer's spouse, "does not violate the requirements or purposes of due process rights and, therefore, is constitutional[.]" *Pell v. City of Chattanooga*, No. E1999-01712-COA-R3-CV, 2000 WL 567821, at \*6 (Tenn. Ct. App. May 9, 2000). The inquiry before us now is whether section 67-5-2502(a)(4), which allows for notice to a delinquent taxpayer to be received and signed for by an individual otherwise authorized to receive mail for the taxpayer, is "reasonably calculated" to apprise a delinquent taxpayer of an enforcement action brought by the county. We conclude that it is and, therefore, that it does not violate the requirements or purposes of constitutional due process.

*iii.*

Finally, Trustee argues that section 67-5-2502(a)(4) violates the Equal Protection clauses of the United States and Tennessee Constitutions because it denies defendants in delinquent taxpayer cases the right "to limit service of process only to someone else authorized to accept service of process for the defendant[.]" However, in doing so, Trustee mischaracterizes section 67-5-2502(a)(4). As stated above, section 67-5-2502(a)(4) designates individuals who are authorized to accept service of process on behalf of delinquent taxpayers – namely, those individuals who are otherwise expressly or impliedly authorized by the taxpayer to receive mail on behalf of the taxpayer. Conversely, in non-delinquent taxpayer cases, "a person with the authority to sign for and receive certified mail does not, without more, qualify as an agent authorized by appointment to receive service of process on behalf of an individual defendant." *Hall*, 319 S.W.3d at 581.

"[B]oth the United States and Tennessee Constitutions guarantee citizens the equal protection of the laws." *Gallaher*, 104 S.W.3d at 460 (citing *State v. Robinson*, 29 S.W.3d 476, 480 (Tenn. 2000)). The Tennessee Supreme Court "has adopted an analytical framework similar to that used by the United States Supreme Court in analyzing equal protection challenges." *Id.* (citing *Robinson*, 29 S.W.3d at 481). "Under this framework, one of three standards of scrutiny applies, depending upon the nature of the right asserted or the class of persons affected: (1) strict scrutiny; (2) heightened scrutiny; or (3) reduced scrutiny, applying the rational basis test." *Id*.

"Strict scrutiny applies when the classification at issue: (1) operates to the peculiar disadvantage of a suspect class; or (2) interferes with the exercise of a fundamental right."

*Id.* Trustee argues that strict scrutiny applies because "the statute in question pertains to fundamental rights that are explicitly or implicitly protected by the Due Process Clause[.]" The State of Tennessee argues the opposite - that the delinquent tax statutes do not implicate a fundamental right. With regard to section 67-5-2502(a)(4) specifically, we agree with the State. Although due process provides defendants a fundamental right to notice and an opportunity to be heard, *Mullane*, 339 U.S. at 314, defendants do not have a fundamental right to dictate how that notice is provided to them. *See Gallaher*, 104 S.W.3d at 461 (distinguishing between a parent's fundamental right to care and custody of their child and the parent's duty to support a child for the purposes of an equal protection challenge); *see also Owens v. I.F.P. Corp.*, 374 F.Supp. 1032, 1035 (W.D. Ky. 1974), *aff'd mem.*, 419 U.S. 807 (1974) (concluding that Kentucky's version of Rule 4.04 satisfied due process and therefore did not implicate a fundamental right even though it provided for different forms of service among in-state and out-of-state defendants). Because section 67-5-2502(a)(4) does not implicate any fundamental right, we review it under the rational basis standard. *Thompson v. Ashe*, 250 F.3d 399, 407 (6th Cir. 2001).

As the Tennessee Supreme Court has explained:

> The equal protection provisions of the federal and state constitutions demand that persons similarly situated be treated alike. *See Tenn. Small Sch. Sys. v. McWherter*, 851 S.W.2d 139, 153 (Tenn. 1993). When applying the rational basis test, we have observed that state legislatures have the initial discretion to determine what is "different" and what is "the same" and that they are given considerable latitude in making those determinations. *See Robinson*, 29 S.W.3d at 480 (citing *Tenn. Small Sch. Sys.*, 851 S.W.2d at 153). Our inquiry into legislative choice usually is limited to whether the challenged classifications have a reasonable relationship to a legitimate state interest. *See id*. We have held that under the rational basis test, a statute may discriminate in favor of a certain class, as long as the discrimination is founded upon a reasonable distinction or difference in state policy. *See Castlewood, Inc. v. Anderson County*, 969 S.W.2d 908, 910 (Tenn. 1998).

> . . . It is not necessary that the legislature state a rational basis for this differential treatment. A classification will pass constitutional muster if we can conceive of some rational basis for the distinction. *See Riggs*, 941 S.W.2d at 53 (stating that a statutory classification is rational "if any state of facts may reasonably be conceived to justify it").

*Gallaher*, 104 S.W.3d at 461–62. "Because taxes produce the revenue by which the government operates, the legislature has wide discretion in the adoption of tax measures, and its judgment must be accorded great respect." *Waters v. Farr*, 291 S.W.3d 873, 903 (Tenn. 2009) (citing *Genesco, Inc. v. Woods*, 578 S.W.2d 639, 641 (Tenn. 1979),

*superseded on other grounds by* 1980 Tenn. Pub. Acts 1278 (codified at Tenn. Code Ann. § 67-1-801(a)(2) (2006)). This deference must also be extended to the methods fixed by the legislature for the collection of such taxes. *Id.* at 902 (citing *E. Tenn. Brewing Co. v. Currier*, 150 S.W. 541, 544 (1912)). In enacting Chapter 5, the Tennessee General Assembly expressly found and determined that:

> (4) The economy of the state has evolved from one primarily based upon the agrarian use of real property to an economy based more upon the improvement of real property by the construction of residential, commercial, and industrial structures thereon. Such improvements require the investments of significant funds and resources;

> (5) A purpose of this chapter is to promote and encourage the development of improvements upon real estate that have been conveyed pursuant to this chapter through the enforcement of tax liens; [and]

> (6) The certainty and finality of the titles to real estate that have been conveyed pursuant to this chapter through the enforcement of tax liens is a necessary prerequisite to the development of improvements thereon[.]

Tenn. Code Ann. § 67-5-2103(d).

"Administrative convenience and expense in the collection or measurement of the tax" alone is a sufficient justification for treating delinquent taxpayers differently than defendants in other actions. *See Carmichael v. S. Coal & Coke Co.*, 301 U.S. 495, 511 (1937). Tax enforcement actions commonly involve a large number of delinquent tax parcels,[3] and the General Assembly's judgment in creating a more efficient means of serving process on delinquent taxpayers – while still satisfying constitutional due process requirements – must be respected. Accordingly, we conclude that the State has a rational, legitimate interest in effecting service upon delinquent taxpayers in an efficient and cost-effective manner that justifies the distinction between defendants in delinquent tax proceedings and defendants in other legal proceedings. Because section 67-5-2502(a)(4) passes the rational basis test, Trustee's equal protection challenge fails.

### C. Issues Raised by Purchaser

Purchaser, as appellee, raises two additional issues on appeal. First, Purchaser argues that this Court should deem waived essentially all of Trustee's arguments due to Trustee's purported failure to adequately tie her arguments to the standards by which this Court must review Trustee's raised issues. We disagree. "It is not the role of the courts,

---

[3] The Default Judgment at issue in this case included approximately 124 individual parcels.

trial or appellate, to research or construct a litigant's case or arguments for him or her, and where a party fails to develop an argument in support of his or her contention or merely constructs a skeletal argument, the issue is waived." *Sneed v. Bd. of Pro. Resp. of Sup. Ct.*, 301 S.W.3d 603, 615 (Tenn. 2010). However, although we affirm the judgment of the trial court, we cannot conclude that Trustee failed to develop an argument or merely constructed a skeletal argument in support of her raised issues.

Finally, Purchaser argues that this appeal is frivolous, contending that all of Trustee's raised issues are waived. "'A frivolous appeal is one that is 'devoid of merit,' or one in which there is little prospect that [an appeal] can ever succeed.'" *Morton v. Morton*, 182 S.W.3d 821, 838 (Tenn. Ct. App. 2005) (quoting *Indus. Dev. Bd. of the City of Tullahoma v. Hancock*, 901 S.W.2d 382, 385 (Tenn. Ct. App. 1995)). Tennessee Code Annotated section 27-1-122 provides:

> When it appears to any reviewing court that the appeal from any court of record was frivolous or taken solely for delay, the court may, either upon motion of a party or of its own motion, award just damages against the appellant, which may include, but need not be limited to, costs, interest on the judgment, and expenses incurred by the appellee as a result of the appeal.

In the exercise of our discretion, we decline to find this appeal frivolous and further decline to award Purchaser's attorney's fees and costs incurred in this appeal.

## CONCLUSION

For all of these reasons, we affirm the judgment of the Chancery Court for Sullivan County, and this case is remanded for further proceedings consistent with this opinion. Costs of this appeal are taxed to the Appellant, Amy S. Tochev, Trustee, for which execution may issue if necessary.

_____
KRISTI M. DAVIS, JUDGE

- 19 -